McBRIDE, Judge.
Defendant, Leon Levin, and the late Joseph Davis were friends; on several occasions they “swapped” checks for Davis’s accommodation. One of these transactions occurred January 29, 1954; Davis, needing money, called on Levin and obtained from him a series of twelve checks drawn on a local bank, each for $200, payable to the order of Joseph Davis. The first check was dated March 5, 1954, and one check was dated the fifth day of each month thereafter through February 1955.
In exchange Levin received from Davis four undated checks drawn on the same bank for $600 each, payable to the order of Levin.
On the same date, i. e., January 29, 1954, Davis, to raise money on Levin’s checks, transferred and surrendered them to plaintiff for $1,300 and other consideration; however, Davis neglected to endorse the checks. Sometime prior to March 5, 1954, Davis “took up” the first check by paying plaintiff $200 and the latter returned the check to Davis.
Davis died March 7, 1954, leaving an insolvent estate.
On November 17, 1955, this suit was instituted by Wilson as “holder and owner” of Levin’s eleven checks to recover from the maker the aggregate amount thereof; Levin defends on the ground that Wilson is. not a holder in due course and pleads compensation and setoff as between Davis’s, checks he holds and the checks sued upon.
After trial plaintiff recovered judgment and Levin appealed to the Supreme Court which appeal was transferred here. Subsequent to the appeal Wilson départed this, life and his widow and heirs have been substituted as parties plaintiff in his stead.
There is no necessity for discussing the several exceptions filed by defendant which were overruled below as it appear^ they have been abandoned.
We think our late brother below erred in rendering judgment in plaintiff’s favor, our opinion being that the debt sued upon was extinguished by compensation.
A check is a bill of exchange drawn on a bank, payable on demand; the provisions of the Negotiable Instruments Law so far as applicable to a bill of exchange payable on demand apply likewise to a check. LSA-R.S. 7:185. Wilson was not a holder and owner in due course of the Levin checks within the purview of the law, but was merely the transferee thereof and became vested only with such title as Davis had thereto. The only other thing Wilson acquired was the right to have Davis’s endorsement on the checks. LSA-R.S. 7:49.
We find it unnecessary to decide whether the endorsement “without recourse” by the *249 administratrix of Davis’s succession pursuant to an order of court on July 13, 1954, constituted Wilson a holder and owner in due course after that date. The fact of such endorsement is immaterial to the issue in the case. At any rate, it is clear from LSA-R.S. 7:49 that Wilson, if the ad-ministratrix’s endorsement is effective, could only have become a holder in due course as of the time of the endorsement, which fact is of no moment.
In the hands of any holder other than a holder in due course such as Wilson, a negotiable instrument is subj ect to the ■same defenses as if it were non-negotiable. LSA-R.S. 7:57.
When two persons are indebted to each ■other, there takes place between them a compensation that extinguishes both debts, LSA-C.C. art. 2207; this compensation takes place by the mere operation of law and even unknown to the debtors, LSA-C.C. art. 2208; compensation can only take place between two debts having equally for their object a sum of money and which are equally liquidated and demandable, LSA-C.C. art. 2209.
The same day Wilson acquired title to Levin’s checks, January 29, 1954, Levin acquired title to Davis’s four undated checks; the two debts were of equal dignity and for the identical sums of money, and it can be said the debts were equally liquidated and ■demandable. In truth, payment of none of Levin’s checks in Wilson’s hands could have been demanded because of their postdating, the first of the series only becoming payable March 5, 1954, whereas Davis’s checks in the hands of Levin were due as of January 29, 1954, the date of issue.
The validity and negotiable character of an instrument are not affected by the fact it is not dated, LSA-R.S. 7:6; where the instrument is not dated it will be considered to be dated as of the time of its issuance. LSA-R.S. 7:17; Fleming v. Sierra, 14 Orleans App. 168.
Under the provisions of LSA-R.S. 7:13 where an instrument expressed to be payable at a fixed period after date is issued undated, any holder may insert therein the true date of issue, and the instrument shall be payable accordingly, LSA-R.S. 7:13. Whether under these provisions the holder of an undated check which is not “payable at a fixed period after date” but payable on demand may insert therein a date is also a matter that need not be decided. However, for some reason not appearing Levin saw fit to date Davis’s checks inserting March 5, 1954, in his own handwriting at the proper place. This is the date borne by the first Levin check that Wilson held. It would make no difference whether we consider the date of Davis’s checks to be January 29, 1954, the date of issue, or whether the date is considered to be March 5, 1954, as filled in by Levin; there was an extinguishment of the Levin debt by the operation of compensation.
Therefore, on March 5, 1954, Wilson was holding, subject to all equities Levin could plead, eleven of the latter’s postdated checks aggregating $2,200, the first bearing the date April 5, 1954, while, on the other hand, Levin held Davis’s four checks totaling $2,400, all dated March 5, 1954.
There was no showing made that up to the time of Davis’s death notice of any kind had been given Levin that Davis had made the transfer to Wilson, or that Levin had knowledge thereof.
Plaintiff attempted to show Levin was cognizant of the transfer by testifying that a few days after Davis’s death Levin called him by telephone and spoke about the checks. Levin denies this and states that it was Wilson who telephoned him.
Even accepting as true Wilson’s testimony that Levin made the telephone call in question, there is nothing at all which would tend to show that Levin was notified or had knowledge of the transaction prior to or on March 5, 1954, the crucial date. If Levin acquired knowledge or notice of the transfer subsequent to Davis’s death, compensation had already taken place and the debt sued upon was extinguished there *250 by. Notification of the transfer of the debt to the debtor does not prevent credits anterior to the notification from being applied as compensation. LSA-C.C. art. 2212 reads as follows:
“The debtor, who has accepted purely and simply the transfer which a creditor has made of his right to a third person, can no longer oppose to the latter the compensation which, before the acceptance, he might have opposed to the former.
“As to the transfer which has not been accepted by the debtor, but which has been notified to him, it hinders only the compensation of credits posterior to that notification.”
For the reasons assigned, the judgment appealed from is avoided and reversed, and it is now ordered, adjudged and decreed that there be judgment for defendant dismissing the suit at the cost of plaintiffs in both courts.
Reversed.