347 So.2d 23 (1977)
Lee Edgar PETITE, Plaintiff-Appellee,
v.
Doris M. RICHARDSON et al., Defendants-Appellants.
No. 5979.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1977.
Rehearings Denied June 24, 1977.
*24 McLure & McLure by T. C. McLure, Jr., Alexandria, for defendants-appellants.
Joseph P. Williams, Andrew Vallien, Natchitoches, for plaintiff-appellee.
Sam Nelken, Natchitoches, for third party plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, WATSON, GUIDRY and ROGERS, JJ.
GUIDRY, Judge.
The above numbered and entitled matter and the case entitled Johnson et al. v. United Services Automobile Association, 347 So.2d 31, No. 5980 of the docket of this court, were consolidated for trial in the lower court. We decide both of these cases today. The facts and law common to both are set forth herein, however, those facts and questions of law peculiar only to the case of Mrs. Annie A. Johnson, et al. versus United Services Automobile Association, supra, are set forth in a separate opinion which we likewise hand down this date.
These consolidated cases arise out of a collision between a left turning automobile driven by Annie Johnson and an overtaking and passing automobile being driven by Doris Richardson. Following said collision the vehicle being driven by Doris Richardson veered off the highway and struck two parked automobiles owned by Lee Edgar Petite.
This suit was instituted by Lee Edgar Petite to recover property damage caused to his two automobiles as a result of the alleged negligence of both Doris Richardson and Annie A. Johnson. Also joined as defendants are United Services Automotive Association, insurer of the Richardson vehicle and Southern Farm Bureau Insurance Company, insurer of the Johnson vehicle. Defendants, Annie Johnson and her insurer, Southern Farm subsequently filed a third party demand against Doris Richardson and her insurer, United Services. Third party *25 plaintiffs, alleging the negligence of Doris Richardson as the sole cause of the accident, pray that there be judgment against the third party defendants for damages which may be incurred by them as a result of the principal demand of Lee Edgar Petite.
We note that the companion suit, supra, is an action brought by Annie Johnson, her husband, Woody Johnson and her daughter, Audrie Johnson (a guest passenger in the Johnson vehicle), seeking damages for personal injuries, property damage, and medical expenses, all incurred as a result of the alleged negligence of Doris Richardson. Defendants in the companion suit, Doris Richardson and her insurer, United Services, answered generally denying the allegations contained in the plaintiffs' petition, and pleaded contributory negligence of Annie Johnson as a bar to plaintiffs' recovery. Further, defendants reconvened against Annie Johnson and her husband seeking to recover property damage sustained by the Richardson vehicle.
At the time of the accident the two vehicles involved, a 1969 Ford driven by Annie Johnson and owned by her husband, Woody Johnson, and a 1971 Oldsmobile driven by Doris Richardson, were traveling west on Louisiana Highway 119. The accident occurred when Annie Johnson, while attempting to turn her vehicle left off of Highway 119 into her private driveway, collided with a vehicle being driven by Doris Richardson. Doris Richardson was attempting to pass the Johnson vehicle. As a result of the impact the Richardson vehicle veered off the highway, across an adjacent ditch, and struck two parked vehicles, one being a 1971 Chevrolet, the other being a 1967 Ford. Both of these latter vehicles were owned by the plaintiff, Edgar Petite. The accident occurred at 12:15 P.M. on October 28, 1975 in the rural village of Natchez, Natchitoches Parish, Louisiana. Weather conditions were clear and dry. Louisiana Highway 119 is a two laned black top thoroughfare. Continuing in a westerly direction from the scene of the accident the highway is a straightaway situated in an area of flat level land. Only a small ditch separates the highway from the adjacent property. The posted speed limit is 55 miles per hour.
Mrs. Johnson testified that prior to the accident she and her daughter, Audrie, had been shopping at a grocery store which is about 1/10th of a mile east of her residence. The grocery store is located at the T intersection of Louisiana Highways 119 and 494. She stated that after leaving the store she stopped before entering the highway, then turned onto Louisiana Highway 119 and proceeded in a westerly direction towards her home. Mrs. Johnson testified that she noticed the Richardson vehicle stopped at the T intersection and that as she went on the Richardson vehicle turned left behind her.
Mrs. Johnson, who was traveling at about 20-25 miles per hour, stated that about 90 yards from her driveway she engaged her left turn directional signal. At this time she also looked back and saw the Richardson vehicle behind her. As she approached her driveway she slowed the vehicle to a near stop and again looked in her rear view mirror where she saw the Richardson vehicle following one car length behind. Mrs. Johnson stated that she did not think Mrs. Richardson was going very fast. Prior to executing her left turn Mrs. Johnson stated that she did not see any directional signal on the Richardson vehicle indicating an intention to pass, nor did she hear a horn blow. Mrs. Johnson did not testify that she looked to her left and rear just prior to commencing her left turn. To the contrary Mrs. Johnson testified as follows:
"A. Yes, I looked just about when I got ready to put my signal lights on. I looked back. She was still coming behind me. And when I got ready to make my turn, I looked again to see were she trying to pass but she was and I didn't see her."
Audrie Johnson, a guest passenger in the Johnson vehicle, corroborated most of the testimony of her mother. She stated that her mother had engaged the left turning signal and after coming to a near stop was fixing to turn when they were hit. Audrie *26 testified as to the location of the two vehicles just prior to the collision as follows:
"Q. I believe you said that you were not driving and about all you knew about this accident is your Mother slowed down to turn in her driveway and just as she was turning, these two cars hit together?
A. Yes.
Q. Is it true that Mrs. Richardson's car was beside your Mother's car when the two cars ran together?
A. Mmm
Q. Did you say yes?
A. Yes."
Both witnesses, Annie and Audrie Johnson, indicated that the signal and brake lights on the Johnson vehicle were working before and after the accident.
Following the collision, Mrs. Johnson said that she saw the Richardson vehicle keep going. Woody Johnson, who was inside his house at the time of the accident, testified that when he heard the impact of the cars he looked through the window and saw the Richardson vehicle jump the ditch in front and travel about 50 feet when it struck the two Petite cars. Woody Johnson thereafter inspected the scene. He testified that the car driven by his wife, was located directly opposite his driveway. It was on the right side of the highway with the left front wheel barely across the center line. Mr. Johnson's testimony in this regard which we consider to be most important, was as follows:
"It was on the right side with the left front wheel just across the line a little piece."
Mrs. Johnson herself testified that the point of impact was approximately 3 feet over the center line.
Willie Hamilton, Chief of Police of the Village of Natchez, investigated the accident shortly after it happened. His report of the accident indicated that the two vehicles had folded together side by side. He stated that Mrs. Johnson's car was sideswiped in the rear about where the gas inlet is located. The investigating officer opined that after the impact the Johnson car was knocked slightly to the right and then stopped while the Richardson vehicle continued on to the far left. Hamilton testified that it looked as though Mrs. Richardson tried to avoid hitting Mrs. Johnson and took to the ditch. He stated that the Richardson vehicle traveled approximately 240 feet from the point of impact to the point where it hit the Petite cars.
Officer Hamilton's testimony reflects that at the accident scene he spoke with Mrs. Richardson who was still in her car when he arrived. He asked her if she was hurt to which she replied she was not. Hamilton testified that at this time he observed that she had a small dog in the car. The dog was laying on the floor of the car near the accelerator. Mrs. Richardson told him that the dog had been injured near her residence by a tractor and she was en route to a veterinarian to have the dog treated. Hamilton testified that she told him she was in a hurry. The officer stated that he observed that the dog was wounded near the back legs and was bleeding.
Officer Hamilton also spoke with Mrs. Johnson who told him that when she began to turn she did not know whether Mrs. Richardson was behind her or not. Hamilton testified that Mrs. Johnson had complaints of pain in her neck.
The testimony of Doris Richardson reflects that prior to the accident she was traveling on Louisiana Highway 494 and as she approached the T intersection with La. 119 she noticed the Johnson vehicle turn from the corner grocerty store and head down La. 119. Mrs. Richardson, who stopped at the intersection, testified that she turned left unto La. 119 directly behind Mrs. Johnson. She stated that Mrs. Johnson was traveling very slowly and estimated her speed to be about 20 miles per hour. Shortly after the turn, and seeing no traffic either to the rear or the front, Mrs. Richardson testified she then put on her directional signal and honked her horn. She then proceeded to pass Mrs. Johnson. Mrs. Richardson stated that at this time she did not see a left turn signal operating on the Johnson vehicle, nor did she see the vehicles brake lights come on. Mrs. Richardson testified *27 that she pulled entirely into the passing lane, moderately accelerated, and was about even with the Johnson vehicle when suddenly Mrs. Johnson began to make her left turn. Mrs. Richardson stated that she attempted to veer left so as to avoid the Johnson vehicle but was unable to do so. Mrs. Richardson stated that the Johnson vehicle struck her vehicle on the right front fender sending her vehicle to the left off the highway and into an adjacent ditch. As she hit the ditch she accelerated. She testified that either her foot slipped off the brakes and hit the accelerator or her little dog fell from the seat and hit the accelerator. Mrs. Richardson's vehicle continued straight on until it struck the Petite's cars.
Mrs. Richardson related that at the time of the accident she was on her way to the veterinarian with her injured dog. The dog had been hit by a tractor and although she was concerned she stated that the dog was not critically wounded or bleeding. The dog was bruised. Mrs. Richardson testified that just prior to the automobile accident her dog had been lying down beside her on the seat. She stated it would get up and limp around. She was watching the dog as well as talking to it.
We here note that, in connection with the damage to Mrs. Johnson's car, Southern Farm Bureau introduced into evidence as its Exhibit 1, a photograph of Mrs. Johnson's car taken shortly after the accident. Our review of the photograph shows that the major damage to the car is located over the left front fender and left front door, with scratches and minor dents on the back door. We can discern no damage to the rear area of the car near the gas inlet.
In regards to the plaintiff's claim it was stipulated at the trial of this matter that property damage to Mr. Petite's 1971 Chevrolet Impala amounted to $1200.00.
The testimony of Richard Hatch, an automobile salesman, was introduced in connection with his examination of the plaintiff's other car, the 1967 Ford. Mr. Hatch testified that the car was a total loss and that the value of the vehicle as of October 1975 was about $525.00 to $550.00. Plaintiff testified that the car had not run since the date of the accident. There is no other evidence in the record relating to Petite's property damages.
The trial judge in brief written reasons concluded as follows:
"The Court accepts the testimony of Annie A. Johnson and plaintiff's witnesses, and find the cause of the accident was the defendant driver being in a hurry. Because of a previous injury to her dog, the defendant was rushing the bleeding and moaning dog to a veterinarian when she tried to overtake and pass the slower moving plaintiff's vehicle, which had taken every precaution prior to commencing a left turn."
Accordingly, judgment was rendered in the instant suit in favor of plaintiff, Edgar Lee Petite and against Mrs. Richardson and her insurer, United Services in the principal sum of $1,749.00.
In the companion matter, Mrs. Annie A. Johnson, et al. v. United Services Automobile Association, supra, the trial court rendered judgment in favor of the plaintiffs and against the defendants as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Annie A. Johnson, and against the defendant, Doris M. Richardson and her insurer, United Service Automobile Association, in the full sum of $2,500.00.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Audrie Johnson, and against the defendant, Doris M. Rihcardson (sic), and her insurer, United Service Automobile Association, in the full sum of $750.00.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Woodie (sic) Johnson, and against the defendant, Doris M. Richardson, and her insurer, United Service Automobile Association, in the full sum of $48.00 for Dr. Kaufman's bill; $468.60 for damage to his car and $15.00 travel expenses for his wife's visit to the doctor . . .

*28 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the reconventional demand of Doris M. Richardson and her insurer, United Service Automobile Association, made against Annie A. Johnson, Woodie (sic) Johnson, and their insurer, Southern Farm Bureau be dismissed."
Mrs. Richardson and her insurer timely perfected appeals in both suits. None of the other parties appealed or answered the appeal of Mrs. Richardson and her insurer, United Services.
Appellant contends that the trial court erred in finding her negligent and Mrs. Johnson free from negligence. We agree that the trial court manifestly erred in finding Mrs. Johnson free from negligence. However, we conclude from our review of the record that the accident in question and resulting damage was caused by the joint negligence of both drivers.
It is well established in the jurisprudence of this state that a motorist who attempts to make a left turn from a public highway is required to ascertain in advance that the way is clear and that the turn can be made safely and without endangering overtaking or oncoming traffic. The failure of a left turning motorist to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence. Sonnier v. Hardware Mutual, 242 So.2d 900 (La.App. 3rd Cir. 1971). The duty of the left turning motorist is two-fold, first to give a proper signal, and secondly to make proper observation that the turn can be made without endangering oncoming or overtaking vehicles. Bamburg v. Nelson, 313 So.2d 872 (La.App. 2nd Cir. 1975).
It is likewise well established that a motorist in judging whether a left turn can be made in safety has the right to assume that the following traffic will observe all the duties imposed upon it by law and common sense and is keeping a proper lookout. Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (La.App. 2nd Cir. 1961) writs denied February 2, 1962; Worley v. Heinen, 280 So.2d 301 (La.App. 1st Cir. 1973) writs refused September 14, 1973.
Our review of the record reveals that although Mrs. Johnson may have complied with the first duty imposed upon her by law in giving a signal she did not fulfill the second duty, that of making proper observation and keeping a proper lookout. As quoted hereinabove Mrs. Johnson admitted at one point in her testimony that as she got ready to turn she looked in her rear view mirror and didn't see the Richardson vehicle. This testimony is further substantiated by the fact that after the accident Mrs. Johnson told the investigating officer that she did not know whether Mrs. Richardson was behind her or not. Further the record reveals that Mrs. Johnson had only just begun her left turning maneuver when the accident occurred. She stated that the point of impact was three feet across the center line in the passing lane of travel. Mr. Johnson, who viewed the scene immediately after the accident testified that only the left front wheel was across the center line "a little piece". Somewhat contradictorily, Mrs. Johnson repeatedly asserted that she was sideswiped in the back of her vehicle near the tank gas inlet. Her own testimony and that of her husband regarding the point of impact, and an examination of a photograph of the Johnson car following the accident clearly indicates that the collision actually occurred around the left front fender and door of her automobile.
Mrs. Richardson stated that she had already entered the passing lane and was even with the Johnson vehicle when Mrs. Johnson turned into the right side of her automobile. The physical evidence, as hereinabove discussed, bears this out. Additionally the testimony of Audrie Johnson, a guest passenger in the Johnson vehicle stated that the Richardson vehicle was beside the Johnson vehicle when the cars collided.
Considering all of the evidence we are convinced that the Richardson vehicle preempted the passing lane prior to Mrs. Johnson's attempted left turning maneuver; that Mrs. Richardson was along side of the Johnson vehicle when Mrs. Johnson commenced *29 her turn; and, the front sides of the two cars collided some three feet across the center line in the passing lane of travel. Mrs. Johnson, had she been keeping a proper lookout should have observed the Richardson vehicle in the passing lane, for it was there to be seen, and in not doing so she breached her duty to observe for overtaking traffic. We find therefore that Annie A. Johnson was guilty of negligence which was a proximate cause of the accident. We find the trial court's conclusion to the contrary manifestly erroneous.
We next consider whether, Doris Richardson, the overtaking motorist, was guilty of negligence which was a joint and concurrent cause of the accident.
Although Mrs. Richardson testified that she did not see any signal or brake lights engaged on the Johnson vehicle, we determine, as did the trial court, that Mrs. Johnson did in fact timely engage her directional signal indicating her intention to execute a left turn. Mrs. Johnson simultaneously slowed her vehicle almost to a stop. Mrs. Richardson confirms this latter fact. Mrs. Johnson had the right to assume that Mrs. Richardson would observe all of the duties imposed upon a following motorist including the duty to keep a proper lookout.
The record reveals that prior to the automobile accident Mrs. Richardson was very concerned about her injured dog which she was taking to a veterinarian. She told the investigating officer at the accident that she was in a hurry. Mrs. Richardson admitted watching and talking to the dog.
We conclude that the evidence demonstrates that the accident occurred, at least in part, because of Mrs. Richardson's attempt to pass the Johnson vehicle without proper lookout and with disregard of the danger ahead. Clearly Mrs. Richardson, who was cognizant of the fact that the Johnson vehicle had slowed to a near stop, should have noticed the signals given by the Johnson vehicle. They were there to be seen indicating Mrs. Johnson's intention to turn. Mrs. Richardson was inattentive, being pre-occupied with the condition of her dog, and proceeded to pass in disregard of this impending dangerous situation. Accordingly, we find Mrs. Richardson guilty of negligence which negligence was a joint and concurrent cause of the accident.
We recognize that in the instant matter the appellants, Doris Richardson and her insurer, filed no third party demand seeking contribution against their co-defendants, Annie A. Johnson and her insurer, Southern Farm Bureau. Nevertheless, we determine on the basis of well settled legal principles that the appeal taken by Doris Richardson and United Services Automobile Association brings their co-defendants, Annie A. Johnson and Southern Farm Bureau before this appellate court. Such an appeal was tantamount to a third party action. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (La.1963). Accordingly it is proper for us to consider the liability of Annie A. Johnson and Southern Farm Bureau as concerns the instant suit.
For the above and foregoing reasons the judgment of the trial court rendered in favor of Edgar Lee Petite is amended as follows: It is ordered, adjudged and decreed that there be judgment in favor of Edgar Lee Petite and against Doris Richardson, United Services Automobile Association, Annie A. Johnson, and Southern Farm Bureau Insurance Company, in solido, for the sum of $1749.00 together with legal interest from date of judicial demand until paid and all costs of these proceedings.
All costs of these proceedings on appeal are to be borne by Doris Richardson and her insurer, and Annie A. Johnson, and her insurer.
AFFIRMED AS AMENDED.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
WATSON, J., concurs in part and dissents in part and assigns written reasons.
DOMENGEAUX, Judge, concurring in part, and dissenting in part.
I agree with the majority opinion to the extent that it affirms the District Court *30 which found actionable negligence on the part of Mrs. Richardson, the driver of the passing vehicle. I agree with the awards made in the District Court except in the case of Audrie Johnson as is explained in my concurring and dissenting opinion in the companion case, # 5980, 347 So.2d 31.
I disagree that there is manifest error on the part of the District Judge who found that the driver of the left turning vehicle, Mrs. Johnson, was free of negligence.
The left hand turn phase of this case presents a close question. It is axiomatic of course that one executing such a turn must not do so until it is clear and safe. The majority opinion quotes from Mrs. Johnson's testimony, presumably to point out that she did not make the last necessary rear view mirror surveillance before turning. Her quoted testimony, considered alone, possibly suggests that. The whole of her testimony on that phase of the question suggest otherwise. It reads:
"A. Yes, I looked just about when I got ready to put my signal lights on. I looked back. She was still coming behind me. And when I got ready to make my turn, I looked again to see were she trying to pass but she was and I didn't see her.
Q. Was she trying to pass you?
A. No.
Q. She was how far behind you then?
A. I'd say about a car length or two, maybe.
Q. What part of the road was she in?
A. She was in the right lane right behind me.
Q. And how fast was she going?
A. Well I couldn't tell it exactly.
Q. Did she look like she was going about your speed or faster or slower?
A. I really couldn't tell how fast she was behind me.
Q. You are saying then that as you began your turn, you looked and there she was behind you?
A. Yes, she was coming behind me."
Additional testimony by Mrs. Johnson reads as follows:
"A. I saw her at the stop sign and then I looked back. About 90 yards from my driveway she was still coming behind me. I put my signal lights on and just as I got ready to make my left turn, I looked back. I didn't see her in the left side trying to pass.
Q. Did you see her at all?
A. I saw her when I looked back.
Q. Where was she when you saw her?
A. She was right behind me.
Q. Now how did you see her?
A. Through my rear view mirror.
Q. The rear view mirror?
A. Yes.
Q. The rear view mirror is located inside the car or . . .
A. Yes.
Q. . . . on the side of the car?
A. The inside.
Q. Could you estimate the distance from your car when you saw her through the rear view mirror?
A. It was about a car length.
Q. One car length?
A. Yes. I'd say aboutyou mean when I looked back and she was behind me?
Q. Yes, ma'am.
A. Yes."
Again, she testified as follows:
"Q. Did this accident happen on a blacktop, hard surface road?
A. Yes, sir.
Q. And I believe you said there were no cars coming.
A. No.
Q. Was it your intention to turn into your driveway at your home?
A. Yes.
Q. How long had you been aware that Mrs. Richardson or that some car was behind you?
A. I knowed it ever since we got to the stop sign. We both had made it to the stop sign and she was coming on *31 behind me and I put my signal lights on I'd say about 90 yards from my driveway and just as I got ready to turn, I looked to see was she in the left lane trying to pass me . . .
Q. Right. Did you say just as you got ready to turn, you looked?
A. Yes.
Q. Now up until that time, you hadn't looked in back of you, had you?
A. No.
Q. When you looked, what did you see?
A. She was behind me you know in the same lane I was."
Mrs. Johnson's testimony, considered as a whole, may not necessarily be interpreted as meaning that she did not look to the rear before turning.
There is a reasonable basis in the record to conclude that Mrs. Richardson suddenly began her passing maneuver after, or at the same time Mrs. Johnson began her left turn.
The trial judge accepted the testimony of Mrs. Johnson and her witnesses. This he has a right to do. Additionally, the physical facts of the accident do not preclude a conclusion that Mrs. Johnson complied with the duties imposed upon her by law before commencing her left turn maneuver.
I suggest that the majority opinion in reversing the purely factual findings of the district judge violates the principle of appellate review of facts as mandated in Canter v. Koehring Company, 283 So.2d 716 (La.1973).
I would affirm the trial court judgment which held that the sole proximate cause of the accident herein was the negligence of Mrs. Richardson.
WATSON, Judge, dissenting in part and concurring in part:
On the issue of liability, I disagree with the decision of the majority to reverse a purely factual case in a clear substitution of judgment by this court for that of the trial court. I would affirm the liability decision of the trial court. Additionally, on this issue I adopt the reasons assigned by Domengeaux, J., in his dissent.
The only points with which I concur are: (1) the affirmance of the award to Lee Edgar Petite; and (2) the reversal of the $750 award to Audrie Johnson for which I find no basis, either in fact or in law.
Therefore, I respectfully dissent in part and concur in part.